# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TARIQ KYAM a/k/a RAYMOND PERRY,**<br><br>Plaintiff,<br><br>v.<br><br>**HUDSON COUNTY JAIL,** *et al.*,<br><br>Defendants. | Civ. No. 2:14-6335<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Tariq Kyam, proceeding *pro se*, brings this 42 U.S.C. § 1983 action against several employees of the Hudson County Correctional Facility, Oscar Aviles, T. Castillo, Lt. Monteleon, Lt. Yurecko, Sgt. Keisiah Ford, Sgt. H. Ford, Sgt. Maros, and Officer Murtha ("HCCF Defendants"). Am. Compl., ECF No. 32. He alleges, among other things, that Defendants unlawfully subjected him to a "lock up" order and subjected him to conditions of confinement that caused pain and suffering, among other things. Defendants moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defs.' Mot., ECF No. 95. The Court decides the matter on the papers without need for oral argument. Fed. R. Civ. P. 78(b); Local Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

## I. BACKGROUND

The following facts are drawn from Defendants' Statement of Undisputed Material Facts ("SMF") and supporting exhibits attached in Defendants' Motion. *See* Defs.' SMF, ECF No. 95-1.[1] Although the Court extended the deadline for filing opposition, ECF Nos. 98, 102, Plaintiff filed no responsive motion papers.

---

[1] When facing a summary judgment motion, this District's Local Civil Rule 56.1(a) compels a non-moving party to file a responsive statement of material facts. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting *pro se* litigants "must abide by the same rules that apply to all other litigants"). Here, Plaintiff filed no responsive Rule 56.1(a) statement. Even so, courts have "traditionally given *pro se* litigants greater leeway where they have not followed the technical rules of pleading and procedure." *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993) (citations omitted). Despite filing no "statement of undisputed material facts, a court may draw the relevant facts underlying the claims from available sources such as the complaint, deposition testimony, the moving litigant's Local Civil Rule 56.1 statement of undisputed material facts and supporting

The facts are not in dispute here. From May 29 to October 2, 2014, Plaintiff was a pretrial detainee at the Hudson County Jail (the "Jail") in Kearny, New Jersey, where he was housed in the infirmary. Defs.' SMF ¶ 3. Am. Compl. ¶¶ 10, 24. Plaintiff was determined by classification officers to be confined to a maximum custody level due to his criminal history and use of a cane. Defs.' SMF, ¶ 4, Ex. A. On May 30, 2014, Plaintiff was evaluated by Dr. Paul Ittoop of CFG Health Systems, LLC, and Dr. Ittoop determined that during Plaintiff's time at HCCF, he was required to sleep on a lower bunk bed. Defs.' SMF ¶ 6, Ex. B. Throughout Plaintiff's term at HCCF, he was assigned a lower bunk bed. Defs.' SMF ¶ 7, Ex. C.

On June 2, 2014, Plaintiff was transferred to the Medical Special Needs Unit at HCCF. Defs.' SMF ¶ 8, Am. Compl. ¶¶ 24-25. On or around June 2, 2014, Plaintiff claims that he became injured while climbing down from a top bunk. Pl.'s Dep. 36:8–22; 37:15–38:5. Nobody witnessed the fall; his cellmate was asleep. *Id.* at 38:6–16. While getting up from the floor, Plaintiff "was in some pain and a little shocked." *Id.* at 38:20.

Jail inmates must submit written requests for medical care. Plaintiff submitted a medical request slip on July 6, 2014, requesting medical care to treat backside pain and inflammation; medication for headaches, backaches, and shoulder pain; and, specific to his fall, Plaintiff was experiencing dizziness and wanted his right hand and arm examined. Defs.' Cert., Ex. E (Pl.'s Jail Medical Records) at 50. He complained the fall aggravated his previously diagnosed anal fistula and an undiagnosed injury to his right pinky finger. Pl.'s Dep. 46:3–48:16, 92:14–19; 155:4–7.

Plaintiff received treatment for his anal discharge related to his backside pain. Ex. E at 51. Just over two weeks later, Plaintiff submitted a medical slip requesting treatment for dizziness and a medical provider made notations acknowledging the treatment request. *Id.* at 52–54. Two days later, medical professionals evaluated Plaintiff and checked his blood pressure daily for a week. *Id.* at 27. Plaintiff had a follow-up visit on August 12, 2014. *Id.* at 34. Medical professionals continued monitoring Plaintiff's blood pressure, prescribed medication for dizziness (Antivert), and entered orders for diagnostic testing (an EKG) and lab work, *id.* at 11–14, 15, 34. Plaintiff's interdisciplinary progress notes contained orders for a follow-up appointment. *Id.* at 34, 47–48. Apart from planned treatments, Jail medical staff also responded, on August 13, 2014, to a "Code White" when Plaintiff complained of experiencing a racing heartbeat and dizziness while showering. *Id.* at 42. Plaintiff was then assigned to the cardiac chronic care clinic and prescribed HCTZ (a diuretic) for hypertension. *Id.* at 35, 43; Pl.'s Dep. 69:23–71:22. He remained there through his time at the Jail until October 2014.

## II. LEGAL STANDARD

A court must grant summary judgment when "there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the

---

exhibits." *Athill v. Speziale*, No. 06-4941 (SDW), 2009 WL 1874194, at *2 (D.N.J. June 30, 2009) (citations omitted).

moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *accord* Fed. R. Civ. P. 56(a). There is a genuine issue of material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," which "might affect the out-come of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. If the movant meets this burden, it then shifts to the non-moving party who must produce evidence sufficient to satisfy the elements of the claim. *See United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011). "A nonmoving party may not 'rest upon mere allegations, general denials, or . . . vague statements." *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When the non-moving party cannot show a genuine dispute about a necessary element of a claim on which it bears the burden of proof at trial, then the court must grant the moving party summary judgment. *Celotex*, 477 U.S. at 322–23.

### III. DISCUSSION

Plaintiff alleges that Defendants "arbitrarily, recklessly, carelessly and deliberately imposed a . . . lock up classification status against Plaintiff that was punitive in effect, solely because of Plaintiff's undecided criminal charges" and that they "imposed punitive living conditions and circumstances against Plaintiff based [on] calculated, fictitious, and orchestrated excuses in complete disregard for Plaintiff's individual facts and custodial record, contrary to well established rights and statutory provisions and requites of inmate discipline." Am. Compl. ¶¶ 49, 51. Defendants argue that Plaintiff's "lock up" classification was not arbitrary, that Plaintiff was not placed in dangerous conditions, that the record is devoid of evidence evincing a serious medical need and that Defendants acted with deliberate indifference, and that Plaintiff's due process rights were not violated. Def.'s Mot. 7-16. Defendants also argue Plaintiff has failed to identify any policy or custom that caused the alleged constitutional violation and that they are otherwise entitled to qualified immunity. *See id.* at 5–7.

#### A. Lock Up Status and Dangerous Conditions

As required by New Jersey law, the HCCF uses the objective classification scoring system when determining at which custody level to hold an inmate. *See* N.J.A.C. 10A:31-22.2(a); 10A:31-22.2(a)(1). HCCF classification officers utilize the Initial Custody Assessment Form to determine the custody level at which inmates should be placed. The Initial Custody Assessment Form generates a numerical score by evaluating severity of current charges or convictions, serous offence history, escape history, institutional disciplinary history, prior indictable convictions, alcohol or durg use history, and stability factors. *See* Def.'s Mot. Ex. A. Plaintiff's score was 13 and so he was assigned to level three max custody. *Id.* Consequently, Defendants had no role outside of filling out the

3

Initial Custody Assessment Form mandated by New Jersey law, in determining that Defendant should be placed at maximum custody level.

With regard to whether confinement conditions for pretrial detainees are punitive or considered punishment, the United States Supreme Court stated:

> [I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount of "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Bell v. Wolfish*, 441 U.S. 520, 539 (1979). "In evaluating the conditions or restrictions of pretrial detention . . . the proper inquiry is whether those conditions amount to punishment of the detainee." *Id.* at 535. The Third Circuit has set forth a two-part test for assessing prison conditions: (1) whether any legitimate purposes are served by these conditions and (2) whether these conditions are rationally related to these purposes. *Union Cty. Jail Inmates v. Di Buono*, 713 F.2d 984, 992 (3d Cir. 1983). When determining whether the conditions are rationally related to the purposes, courts must analyze, while looking at the totality of the circumstances, whether the conditions claimed caused the inmates to endure genuine privations and hardship over an extended time period that the adverse conditions become excessive as compared to the purposes assigned to them. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (citing *Bell*, 441 U.S. at 542).

Here, Plaintiff claims "extremely tight, extremely stressful, humiliating, and psychologically tormenting conditions of confinement . . ." due to tight cell conditions for 22 or 23 hours per day with no privacy. Am. Compl. ¶¶ 54-55. Defendants had a legitimate purpose for placing Plaintiff in these conditions due to his classification as a maximum risk inmate. In light of Plaintiff's maximum classification status and possessing a cane that could be used as a weapon, Plaintiff was placed in non-harmful conditions that did not cause hardship. Consequently, Plaintiff's conditions were rationally related to the purposes.

Plaintiff alleges that the Defendants housed Plaintiff in dangerous conditions despite their knowledge of Plaintiff's health condition. On May 30, 2019, Dr. Itoop specified that Plaintiff must be placed on a lower bunk bed through his stay at HCCF Defs.' Mot. Ex. C. Because Plaintiff was assigned a bottom bunk bed throughout his stay at HCCF in accordance with Dr. Itoop's mandate, Plaintiff can make no showing of a dangerous condition.

### B. Inadequate Medical Care

To sustain an inadequate medical care claim, a plaintiff must show the defendant displayed "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble*, 429

4

U.S. 97, 104 (1976). Deliberate indifference occurs when an official recklessly disregards a substantial risk of serious harm. *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009).

Inadequate medical care claims contain two requirements. *First*, a plaintiff must objectively show a serious medical need. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987); *Atkinson v. Taylor*, 316 F.3d 257, 266 (3d Cir. 2003) (finding a serious medical need when the "denial or delay causes an inmate to suffer a life-long handicap or permanent loss"). *Second*, a plaintiff must show that the defendant acted "deliberately indifferent to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (cleaned up). That is, the defendant "exposed a prisoner to a sufficiently substantial risk of serious damage to future health." *Giles*, 571 F.3d at 330 (quoting *Farmer*, 511 U.S. at 839).

"It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 346 (noting "mere disagreement as to the proper medical treatment" cannot support a constitutional violation). When "a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017). Thus, "courts disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment," *id.* at 228, "unless it is shown to be a substantial departure from accepted professional judgment, practice or standards," *White v. Napoleon*, 897 F.2d 103, 112 (3d Cir. 1990) (citation omitted).

Municipal liability under Section 1983 may attach to companies providing inmate medical services. *West v. Atkins*, 487 U.S. 42, 54 (1988); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003). But such liability cannot be grounded under a theory of respondeat superior. *Natale*, 318 F.3d at 583–84; *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, liability attaches only if a plaintiff proves a policy or custom was "the moving force" behind the constitutional injury. *See, e.g.*, *See, e.g.*, *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997) (holding that the plaintiff must show a "direct causal link between the municipal action and the deprivation of federal rights").

Plaintiff here cannot sustain the deliberate indifference claim. Devoid from the record is sufficient evidence showing Plaintiff's complained-of medical ailments were serious or that medical officials consciously disregarded a risk of harm of which they were aware. *See Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347 ("The detainee's condition must be such that a failure to treat [it] can be expected to lead to substantial and unnecessary suffering, injury, or death."). Even if the Court treated Plaintiff's alleged injuries sustained from his fall and his pre-existing conditions as serious, the uncontroverted medical records

5

show that Jail medical providers provided Plaintiff responsive treatment when they were aware of Plaintiff's medical complaints. Defendants' expert—a board certified internist and hospitalist and long-time practitioner in the field of correctional medicine—reviewed Plaintiff's medical records and concluded that Jail medical staff met the applicable standard of care. Defs.' Cert., Ex. I (Defs.' Expert Medical Report) at 7. Plaintiff offers no evidence challenging Defendants' expert report. Thus, given the medical care received at the Jail, Plaintiff's admissions that he only had intermittent pain and received treatment for his documented pre-existing conditions, and the absence of evidence showing Defendants' treatment fell outside acceptable professional standards, Plaintiff has failed to show any genuine dispute of fact as to having a serious medical need and that Defendants consciously disregarded "a substantial risk of serious harm." *Farmer*, 511 U.S. at 847; *see Jetter v. Beard*, 130 F. App'x 523, 526 (3d Cir. 2005) (finding no constitutional violation when "the evidence establishe[d] that [plaintiff] received care for his medical conditions, including evaluations by various medical personnel, prescriptions for several different medications, and an EKG performed by medical personnel"). Further, with no denial of a constitutional right, Plaintiff cannot make out a Section 1983 claim against CFG. *See Natale*, 318 F.3d at 585. Therefore, Defendants are entitled to judgment as a matter of law.

### C. Due Process Violation

Plaintiff claims that Defendants "arbitrarily, recklessly, carelessly, and deliberately acquiesced in and acted in concert in violating Plaintiffs rights to due process and protections of the statutory procedures and law." Am. Compl. ¶ 50. Pursuant to the Prison Litigation Reform Act of 1996, prisoners confined in any jail, prison, or other correctional facility may not bring an action under 42 U.S.C. § 1983 until their administrative remedies are exhausted. 42 U.S.C. § 1997e(a). "Failure to exhaust is an affirmative defense the defendant must plead and prove; it is not a pleading requirement for the prisoner-plaintiff." *Small v. Camden Cty.*, 728 F.3d 265, 268-69 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 212, 216-17 (2007). HCCF has a grievance procedure for medical services and non-medical services. The Inmate Rule Book, provided to each inmate, states that if an inmate has an immediate medical emergency, the inmate should report the matter to the officer on duty. Defs.' Mot. Ex. M. When the supervisor responds, the supervisor should determine if the situation is an actual emergency, and if so, should bring the inmate to the Health Service Administrator. *Id*. However, "[i]f it is determined that the grievance is not an emergency, standard grievance procedures shall apply." *Id.* Here, Plaintiff complained of the medical situation and was provided medical care in a timely fashion once the medical slip was received. For non-medical emergencies, Plaintiff used the inmate kiosk as prescribed by the Inmate Rule Book and received answers to his grievances. Defs.' Mot. Ex. N. Plaintiff's due process claims are without merit.

## IV. CONCLUSION

Accordingly, Defendants' motion for summary judgment, ECF 95, is **GRANTED**. Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**. An appropriate order follows.

**Dated: March 9, 2020**

                                           */s/ William J. Martini*
                                           **WILLIAM J. MARTINI, U.S.D.J.**